**FILED**
JUL 31 2008
DAVID CREWS, CLERK
By: _____ Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA

v.                                              CRIMINAL NO. 1:07cr 00176

STEPHEN FINCH, and                              18 U.S.C. § 371(a)
PETER BERNEGGER                                 18 U.S.C. § 1341
                                                18 U.S.C. § 1343
                                                18 U.S.C. § 1344

## SUPERSEDING INDICTMENT

The Grand Jury charges that:

### COUNT ONE

1. From on or about June 2003 to on or about August 2005, in the Northern District of Mississippi and elsewhere, STEPHEN FINCH and PETER BERNEGGER, defendants, did knowingly devise and intend to devise a scheme and artifice to defraud and for obtaining money by means of false and fraudulent pretenses, representations and promises through the use of wire communication in interstate commerce and through the use of the mails.

### THE SCHEME

The following were parts of the scheme and artifice to defraud:

2. STEPHEN FINCH and PETER BERNEGGER, defendants, owned various companies including Food Technology and Engineering, LLC, Citrus Products International, LLC, and We-Gel, LLC. 3. It was a part of the scheme and artifice that the defendants, STEPHEN FINCH and PETER BERNEGGER, would attempt to solicit monetary investments in the aforementioned companies through false and fraudulent pretenses, representations and promises to potential investors.

1

4. As part of the scheme and artifice to defraud, Finch and Bernegger falsely represented to potential victims that Finch was a food scientist with a doctoral degree or other advanced degree from the University of Western Sydney and Hawkesbury Agricultural College in Sidney, Australia.

5. As further part of the scheme and artifice to defraud, Finch and Bernegger would explain to their potential victims that a specific corporation had been or would be formed to handle their investment. These various corporations included Food Technology and Engineering, LLC, Citrus Products International, LLC, and We-Gel, LLC. The concepts behind these companies each related to engineering or creating new and profitable by-products from existing food products or food waste products in the market. Finch and Bernegger would explain the processes by which these by-products ostensibly were to be made and then provide information related to enormous potential financial gain should the would-be victim invest in the company. In the end, Finch and Bernegger defrauded investors out of in excess of $790,000.00.

6. It was further part of the scheme and artifice to defraud that Citrus Products International, LLC ("CPI") was incorporated as a Mississippi Limited Liability Company on May 19, 2004. Finch and Bernegger told potential investors in CPI that they had developed processes to extract limonin from lemon seeds that could be used in the treatment of cancer. Specifically, they told potential investors that a company by the name of "Nutra-West," based in Douglas, Wyoming, was interested in the limonin and would possibly pay $3.25 million for 1.2 pounds of limonin if the extract was eighty-five percent pure.

7. It was further part of the scheme and artifice to defraud that We-Gel, LLC was incorporated as a Mississippi Limited Liability Company on May 3, 2004. Finch and Bernegger told potential investors in We-Gel that they had developed a process of producing a gelatin utilizing the

2

Case 1:08-mj-00657 Filed 08/15/08 Page 2 of 9 Document 1

waste created by fish processing plants. Finch and Berriegger also provided projected earnings for potential investors in We-Gel based on the waste produced by the Mississippi catfish processing plants.

8. It was further part of the scheme and artifice to defraud that Stephen Finch would tell potential investors about the company, Food Technology and Engineering, LLC ("FTE"). Finch told potential investors in FTE that he wanted to develop a plant in Hawaii that could extract dietary fiber from fruit and then market the fiber as a product to enhance food products being sold on the market. Finch made at least two trips to Hawaii ostensibly to meet with potential farmers and examine potential plant sites. No contracts were ever made with farmers and no plant was ever started.

### EXECUTION OF THE SCHEME

9. For the purpose of executing the aforesaid scheme and artifice to defraud, the defendant, STEPHEN FINCH, on or about November 23, 2004, did cause Larry Mobley to send via interstate wire transfer approximately $200,000.00 to the defendant, falsely and fraudulently pretending, representing, and promising that his company FTE needed $1,200,000.00 to begin a process by which it could extract dietary fiber from fruit and then market the fiber as a product to enhance food products being sold on the market, and if Larry Mobley acted soon, there was still the potential to invest $200,000.00, when in fact no other investors had made any contribution to FTE for the purposes of the fiber project. Finch further represented to Mobley that he had a masters degree when in fact he did not. Additionally, Finch told Mobley that he had potential customers ready to buy the finished fiber product, only to later admit that he did not have any potential customers for the product. Production never did begin, and Mobley, who ended up assuming the debts of the company, lost approximately $350,000.00. The misrepresentations and actions set forth herein constitute wire fraud in violation of Title 18 United States Code, Section 1343.

Case 1:08-mj-00657 Filed 08/15/08 Page 3 of 9 Document 1

## COUNT TWO

10. The allegations of paragraphs 1-8 are incorporated herein by reference.

11. For the purpose of executing the aforesaid scheme and artifice to defraud, the defendant, PETER BERNEGGER, on or about June 1, 2004, did cause Craig Trebatoski to send via the mail approximately $100,000.00 to the defendant, for investment in his company We-Gel, LLC, falsely and fraudulently pretending, representing, and promising that his company We-Gel, LLC owned a process by which it could utilize waste material from fish processing plants by creating a gel attractive to pharmaceutical companies and cosmetic companies when in fact no viable product was ever created and no contracts for the sale of the product or customers had been or ever were obtained, all in violation of Title 18 United States Code, Section 1341.

## COUNT THREE

12. The allegations of paragraphs 1-8 are incorporated herein by reference.

13. For the purpose of executing the aforesaid scheme and artifice to defraud, the defendant, PETER BERNEGGER, on or about February 24, 2005, did cause Leo Bieneck to send via the mail approximately $25,000.00 to the defendant for investment in his company We-Gel LLC, falsely and fraudulently pretending, representing, and promising that his company We-Gel, LLC owned a process by which it could utilize waste material from fish processing plants by creating a gel attractive to pharmaceutical companies and the cosmetic companies when in fact no viable product was ever created and no contracts for the sale of the product or customers had been or ever were obtained, all in violation of Title 18 United States Code, Section 1341.

## COUNT FOUR

14. The allegations of paragraphs 1-8 are incorporated herein by reference.

15. For the purpose of executing the aforesaid scheme and artifice, the defendant, PETER

4

BERNEGGER, on or about January 28, 2005, did send via U.S. Mail through interstate transmission a letter to all investors of We-Gel, LLC, seeking additional cash investments. As part of the letter and in furtherance of his effort to obtain additional cash investment in his company, Bernegger stated to investors that he had a letter of intent with a Texas fish processing company named GAF, for a joint venture between We-Gel, LLC and GAF whereby GAF would use We-Gel's technical expertise, patent, engineering and marketing to make gelatin out of fish waste from the GAF factory, when in fact no such letter of intent existed. As a result of this solicitation, investors in We-Gel, LLC subsequently sent and delivered additional money to We-Gel, LLC for the purpose of increasing their investment in the company. The misrepresentations and action set forth herein constitute mail fraud in violation of Title 18 United States Code, Section 1341.

## COUNT FIVE

16. The allegations of paragraphs 1-15 are incorporated herein by reference.

17. From on or about June 2003, and continuing thereafter until on or about August 2005, in the Northern District of Mississippi and elsewhere, the defendants STEPHEN FINCH and PETER BERNEGGER, did knowingly and willfully conspire and agree together and with each other to commit wire fraud and mail fraud as set forth more fully in Paragraphs 1-14 above.

During and in furtherance of the conspiracy and to effect the objects of the conspiracy, at least one of the co-conspirators committed at least one of the following overt acts:

(a) On or about May 2004 the defendants, STEPHEN FINCH and PETER BERNEGGER, met with potential investors and falsely represented to the investors that Finch had a PhD or other advanced degree, that they had agreements, contacts, or commitments in place with potential customers, and that they were producing or had the ability to produce certain viable products.

5

(b) On or about January 28, 2005, the defendant PETER BERNEGGER, sent correspondence to investors of We-Gel seeking additional investments and falsely representing that We-Gel had a letter of intent from a Texas fish processing company named GAF.

The conspiracy and overt acts set forth herein constitute a violation of Title 18 United States Code Section 371(a).

## COUNT SIX

18. From on or about January 18, 2005, until on or about November 28, 2005, the defendant PETER BERNEGGER, devised a scheme and artifice:

    (a)    to defraud BancorpSouth, a bank whose deposits were then insured by the Federal Deposit Insurance Corporation, and

    (b)    to obtain money and other property owned by and under the custody and control at BancorpSouth, a bank whose money and other property were then insured by the Federal Deposit Insurance Corporation, by means of false and fraudulent pretenses, representations and promises.

It was part of the scheme and artifice to defraud that the defendant Bernegger represented to the bank that certain equipment pledged as collateral for a loan was owned free and clear by his company, We-Gel LLC, when in fact the equipment pledged as collateral was subject to a first lien filed by the Mississippi Land, Water and Timber Resources Board. Additionally, Bernegger pledged as collateral for the Bancorp South loan to We-Gel, LLC property located at E9590 Hickory Ridge in New London, Wisconsin. However, after Bernegger pledged the Wisconsin property as collateral on the Bancorp South loan to We-Gel, LLC, but before finalization of the paperwork, Bernegger used the same Wisconsin property as collateral to secure another loan in the amount of $100,000.00 from Anchorbank, FSB, thus negatively affecting Bancorp South's security interest in the subject

6

Wisconsin property.

On or about January 18, 2005 in the Northern District of Mississippi, the defendant Bernegger executed the scheme and artifice as set forth above by sending a letter to BancorpSouth executive Bruff Sanders stating that We-Gel LLC, owned the subject equipment to be used as collateral free and clear when the defendant Bernegger knew the equipment to be subject to a lien by the Mississippi Land, Water and Timber Resources Board, which letter resulted in the bank issuing one or more loans to the defendant's company, We-Gel LLC. The initial loan was issued on or about May 11, 2005 in the approximate amount of $100,567.50. A second loan was issued on or about May 25, 2005 in the approximate amount of $11,394.00. These two loans were eventually combined into a single loan in the approximate amount of $140,900.21 on or about November 28, 2005, which loan was secured by the subject Wisconsin property listed above as well as by various and numerous pieces of equipment listed in the January 18, 2005 letter from Peter Bernegger to Bruff Sanders referenced above. The actions of the defendant Bernegger set forth herein constitute a violation of Title 18 United States Code Section 1344.

**A TRUE BILL**

_____  /s/ *SIGNATURE REDACTED*
**UNITED STATES ATTORNEY**   **FOREPERSON**

7

Case 1:08-mj-00657   Filed 08/15/08   Page 7 of 9   Document 1

RECEIVED

JUL 3 1 2008

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA

v.                                              CRIMINAL NO. 1:07cr00176

STEPHEN FINCH, and                              18 U.S.C. § 371(a)
PETER BERNEGGER                                 18 U.S.C. § 1341
                                                18 U.S.C. § 1343
                                                18 U.S.C. § 1344

## NOTICE OF PENALTIES

### COUNT ONE

18 U.S.C. § 1343

NM than 20 years imprisonment - 18 U.S.C. § 1343;
NM than $250,000 fine, or both - 18 U.S.C. § 3571;
NM than 3 years supervised release - 18 U.S.C. § 3583(b)(2); and
$100 special assessment - 18 U.S.C. 3013(a)(2)(A).

### COUNTS TWO, THREE and FOUR

18 U.S.C. § 1341

NM than 20 years imprisonment - 18 U.S.C. § 1343;
NM than $250,000 fine, or both - 18 U.S.C. § 3571;
NM than 3 years supervised release - 18 U.S.C. § 3583(b)(2); and
$100 special assessment - 18 U.S.C. 3013(a)(2)(A).

### COUNT FIVE

18 U.S.C. § 371

NM than 5 years imprisonment - 18 U.S.C. § 371;
NM than $250,000 fine - 18 U.S.C. § 3571;
NM than 3 years supervised release - 18 U.S.C. § 3583(b)(2); and
$100 special assessment - 18 U.S.C. 3013(a)(2)(A).

8

**COUNT SIX**

18 U.S.C. § 1344

NM than 30 years imprisonment - 18 U.S.C. § 371
NM than $1,000,000 fine - 18 U.S.C. § 371
NM than 5 years supervised release - 18 U.S.C. § 3583(b)(1); and
$100 special assessment - 18 U.S.C. 3013(a)(2)(A).

ROBERT J. MIMS MSB# 9913
Assistant United States Attorney
900 Jefferson Avenue
Oxford, MS  38655
Telephone 662/234-3351
Fax 662/234-3372

9